J-S41044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.R.L., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.T.G., FATHER | : | No. 355 MDA 2017 |

Appeal from the Decree January 30, 2017
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2206 of 2016

BEFORE:    GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 22, 2017**

Appellant, A.T.G. ("Father"), appeals from the decree entered in the Lancaster County Court of Common Pleas, Orphans' Court, which changed the family goal to adoption and granted the petition of the Lancaster County Children and Youth Social Service Agency ("Agency") for involuntary termination of Father's parental rights to his minor child, A.R.L., Jr. ("Child"). We affirm in part and remand with instructions and for further proceedings if necessary.

In its opinion, the Orphans' Court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Father raises one issue for our review:

> DID THE [ORPHANS'] COURT ERR IN FINDING THAT THE AGENCY MET ITS BURDEN OF PROOF THAT INVOLUNTARY TERMINATION IS WARRANTED UNDER 23 PA.C.S. SECTION 2511(A)(1) AND (2)?

_____

*Retired Senior Judge assigned to the Superior Court.

(Father's Brief at 7).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We

may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

The Agency filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(1)-(2). Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence

of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his... conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his... parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not

- 4 -

limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. **In re A.L.D.**, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." **Id.** at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of **In re Geiger**, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In Interest of Lilley**, 719 A.2d 327, 330 (Pa.Super. 1998). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P., supra** at 1117. **See also In re K.Z.S.**, 946 A.2d 753, 758 (Pa.Super. 2008) (stating: "Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for involuntary termination of parental rights").

"Under section 2511, the trial court must engage in a bifurcated process." **In re I.J., supra** at 10.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his... parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

> [A] best interest of the child analysis under [section] 2511(b) requires consideration of intangibles such as love, comfort, security, and stability. To this end, this Court has indicated that the trial court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. Moreover, in performing a "best interests" analysis[, t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*In re I.J., supra* at 12 (internal citations and quotation marks omitted) (remanding for comprehensive best interests analysis under Section 2511(b); although court reviewed evidence of record regarding relationship between child and mother, which appears to reflect that no natural parental bond exists, court did not reach definitive finding on whether such bond exists; on remand, court had discretion to take additional testimony and receive more evidence to complete best interests analysis).

"When conducting a bonding analysis, the court is not required to use

expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P., supra*** at 1121 (internal citations omitted). "While a parent's emotional bond with his… child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 104 (Pa.Super. 2011). "The mere existence of an emotional bond does not preclude the termination of parental rights." ***Id.*** Moreover, a "parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." ***In re Z.P., supra*** at 1121. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S., supra*** at 762-63.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Leslie Gorbey, we conclude Father's issue merits no relief. The Orphans' Court opinion comprehensively discusses and properly disposes of the question presented. (***See*** Orphans' Court Opinion, filed March 28, 2017, at 6-9) (finding: under Section 2511(a)(1), in the six months immediately preceding filing of petition for involuntary termination of Father's parental rights, Father's only effort on behalf of Child included taking DNA test a full year

after he was first notified that he might be Child's biological father;[1] Father missed 3 appointments for testing because "he was not good with dates"; court recognized that Child was forced to remain in placement for almost two years, while continuing to wait for Father to "step up"; under Section 2511(a)(2), Father's efforts were not even minimal; had Father attended genetic testing when originally scheduled, the Agency would have been able to assess Father and make necessary service referrals before Child remained in placement for 15 months; Father was solely responsible for delay in genetic testing; Father's continued disinterest in caring for Child supports court's termination decision under subsection (a); court cannot gamble with safety and welfare of Child).  Accordingly, as to Father's issue on appeal regarding the sufficiency of the evidence to support termination of his parental rights under 23 Pa.C.S.A. § 2511(a)(1)-(2), we affirm on the basis of the Orphans' Court opinion.

Nevertheless, careful review of the certified record reveals the court did not place on the record any "best interests" analysis under Section 2511(b).  We recognize Father did not challenge the court's decision under Section 2511(b) on appeal.  Still, the Orphans' Court's consideration of

---

[1] Father criticizes the court's mention of Mother's report, as presented in a February 2016 permanency review hearing petition, that Father was not interested in submitting to any testing.  Nothing in the record, however, indicates this reference was a dispositive factor in the Orphans' Court's final decision.

Section 2511(a) **and** (b) is necessary for the involuntary termination of parental rights. Therefore, we are constrained to remand the matter to the Orphans' Court for a full Section 2511(b) analysis. ***See In re I.J., supra***; ***In re K.Z.S, supra***. On remand, the court has the discretion to take additional testimony and receive more evidence to complete the Section 2511(b) best interests analysis. ***See In re I.J., supra***. Accordingly, we affirm the Orphans' Court decision under 23 Pa.C.S.A. § 2511(a) but remand for the court's consideration and analysis under 23 Pa.C.S.A. § 2511(b) and further proceedings, if necessary.

Decree affirmed in part; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: A.R.L., Jr.  :  Docket No: 2206 OF 2016

  :  SUPERIOR CT NO: 355 MDA 2017

BY GORBEY, J.

## OPINION SUR APPEAL

### Procedural History

This matter last came before this Court on the October 19, 2016 Petition filed by the Lancaster County Children and Youth Social Service Agency ("Agency") to terminate the parental rights of A.T.G. ("Father") to A.R.L., Jr. ("A."), born May 2014. *N.T. at 6.* Y.D. ("Mother") and Father are the biological parents of A. and his brother A.G., born January 2010. *1/30/17 N.T. at 6.*

This family's contact with the Court in the dependency matter began with the Agency's filing for physical and legal custody of A.R.L. and his brother, granted by the Court on April 30, 2015.[1] The Agency then filed a October 19, 2016 Petition to terminate the parental rights of Father.[2] Several hearings were continued and rescheduled, and the hearing was concluded on January 30, 2017; Father was present with counsel. That day, a Decree was issued to terminate the parental rights of Father

---

[1]This case is also docketed to CP-36-DP-92-2015 in the Juvenile Court, and was incorporated into the instant Orphans' Court matter by Order dated November 28, 2016. For clarity's sake, we refer to either the OC-docket or the DP-docket, and the date and title of the document cited.

[2]Mother's parental rights were terminated by decree on January 10, 2017.

1

to A.R.L. On February 27, 2017, Father filed the instant appeal with the Pennsylvania Superior Court.

## Factual History

In April of 2015, the Agency received a report of a concern for the welfare of A. and his brother; the boys were living with Mother and A.L. (A.'s "Presumptive Father"), and the concerns focused on a safety concern with hoarding in the home, unstable housing, and Mother's mental health history. *DP-docket 5/15/5 Order, 1/9/17 N.T. at 13, 1/30/17 N.T. at 6-7.* The Agency sent A.'s brother A.G. to live with his paternal grandmother,      . ("Grandmother") in Ohio, and a family friend was caring for A. until the housing situation could be resolved.[3] *DP-docket 5/1/15 Order.* Shortly afterwards, on April 30, that family friend was no longer able to care for A., but could not locate Mother or Presumptive Father. *DP-docket 5/1/15 Order, 1/30/17 N.T. at 8-9.* As a result, the Court issued a placement Order on May 1, 2015. A June 8, 2015 Child Placement Plan provided goals for A., Mother, and Presumptive Father, and Grandmother was identified as the kinship resource for A.'s brother, A.G. *1/9/17 N.T. at 14, 18.*

In July of 2015, it was confirmed that Presumptive Father was <u>not</u> the biological father of A. *DP-docket 9/21/15 Petition, 1/9/17 N.T. at 6, 9, 20, 1/30/17 N.T. at 7-8.* On August 25, 2015, an Order directing genetic testing was mailed to Father in Youngstown, Ohio. *1/9/17 N.T. at 6, 30, 1/30/17 N.T. at 9.* The Agency caseworker also spoke with Father at this time, regarding the need for genetic testing. *1/9/17 N.T.*

---

[3]At this time, it was believed that A. and A.G. were half-brothers, with the same Mother, but different fathers, such that Grandmother was the grandmother of A.G., but not of A.

2

*at 10, 14, 20, 44.* Father agreed, at that time, to submit to testing; the Agency then arranged for out-of-state testing. *1/9/17 N.T. at* 21, 44. A genetic test was scheduled for Father on October 20 in Ohio, and notice was mailed to the Quentin Drive address and signed-for by Father on October 3. *1/9/17 N.T. at* 30, 32-33, 35-36, 41. In September, the Agency placed two calls and left messages with Father, but those calls were not returned. *DP-docket 9/21/15 Petition, 1/9/17 N.T. at 15, 1/30/17 N.T. at 24.* In October of 2015, at a Permanency Review hearing, any visits for A. with any father were suspended, pending identification of a father. Father missed the October 20 genetic test, and made no effort to reschedule. *1/9/17 N.T. at* 30. A February 2016 Permanency Review hearing Petition indicated that Father told Mother he "does not want to be tested," and the Agency's call to Father's phone went unanswered.

Father subsequently failed to appear for genetic testing on three occasions scheduled over the year. *1/9/17 N.T. at 6, 11, 14-15 , 22, 26, 1/30/17 N.T. at 24, 49, 50.* The Agency made a UIFSA filing in December of 2015, because Father was out of the Agency's jurisdiction, and Ohio followed up. *1/9/17 N.T. at* 34-35, 39. Father offered no explanation to the Agency, despite being informed of the importance of the genetic testing. *1/9/17 N.T. at* 22, 24, 25.

In August of 2016, over a year <u>after</u> the Order directing genetic testing and <u>after</u> Father agreed to be tested, Father submitted to a DNA test which proved him to be A.'s biological father. *OC-docket Agency Ex. 2, 1/9/17 N.T. at 39, 1/30/17 N.T. at 6-7. 9, 10, 24, 26, 49-50.* The results were provided to Father sometime after the August 31, 2016 Notary date, and were filed with the Ohio Courts on September 19, 2016. *DP-docket*

3

*Agency Ex. 2, 1/9/17.* On September 12, 2016, at a Permanency Review hearing, the Agency noted that A. had been in placement for 15 months and that it was preparing a Termination of Parental Rights Petition; Father was not notified of that hearing because he was not yet identified, in <u>this</u> jurisdiction, as A.'s father. *1/9/17 N.T. at 8, 9.* In October of 2016, the Agency received the results of the genetic testing and Father was identified as A.'s biological father. *1/9/17 N.T. at 7, 10.*

Father was consistently notified of hearings and decisions after he was identified as A.'s biological father. *1/9/17 N.T. at 8, 9, 10, 1/30/17 N.T. at 10.* A preliminary Decree was filed October 19, 2016, and notices were mailed to the parents, including Father at his Youngstown, Ohio address; Father's mother, Grandmother, signed for service of the Decree. *OC-docket Agency Ex. 1, 11/28/16.* The Court's November 28, 2016 Order, incorporating the dependency matter into the termination matter was also mailed to Father. A home study was conducted, pursuant to an Interstate Compact agreement and because Grandmother offered to serve as a kinship resource, but the address provided was that of Grandmother, and was not Father's primary residence. *1/9/17 N.T. at 17-18, 1/30/17 N.T. at 12-14.* When the Ohio-agency representative arrived to begin a home evaluation on January 11, 2017, she learned that Father was not living at that address. *1/9/17 N.T. at 41, 1/30/17 N.T. at 32, 41.*

A January 9, 2017a dispositional hearing included Father because "he was just determined to be the father through genetic testing." *DP-docket 1/10/17 Order.* At that hearing, it was noted that Father had failed to appear for genetic testing on more than one occasion. *OC-docket Agency Ex. 2, 1/9/17, 1/9/17 N.T. at 6, 11.* Father testified

that he missed the October 20, 2015 testing date because he put the notice in the glove box of his car and forgot about it. *1/9/17 N.T. at* 45, 52-53. He tried to go the next day, but became lost and went to the "wrong courthouse;" when he found the testing site, he was told to reschedule the test, and it took "a couple of months" to get it rescheduled. *1/9/17 N.T. at* 45, 53-54. When Father received notice of a second testing appointment, he "missed it again because [he] got called in early for work that day." *1/9/17 N.T. at* 45-46, 53, 54. At some point, Father arrived at the testing location and asked to do the testing, and was scheduled for a third appointment; he missed it again, noting that he is "not good with dates." *1/9/17 N.T. at* 46, 53, 56.

At that same hearing, Father was also given no reunification goals; the Agency noted that A. had been in placement for 18 months at that time, over the 15-month statutory period, that Father made little effort to be genetically tested, and giving Father plan goals would add even more time to A.'s placement. *1/9/17 N.T. at 10-11, 18-19, 22-24, 1/30/17 N.T. at 14-16, 18-20, 21, 25-26.* The Agency also noted that A. was placed at age one, and was two-and-one-half-years old at this time, having spent over half of his life in placement, and had successfully bonded with his resource parents who are a potential permanent home. *1/30/17 N.T. at 16-18.*

The Court signed the January 30 decree terminating Father's parental rights to A., concluding that Father's failure to submit to genetic testing within a reasonable time evidenced parental neglect of his son A,, as well as a purpose to relinquish parental rights. *1/9/17 N.T. at 59-60.*

## ISSUE

Whether a termination of parental rights is appropriate when the child has been in placement for almost two years during which time Father failed to submit to genetic testing such that he could not be identified as the child's father and was thus not available to care for the child?

## ANALYSIS

Parental rights may be terminated by statute; the pertinent statute, 23 Pa. C.S. §2511(a), provides for termination of those rights when:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

"In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re Adoption of M.R.B.*, 25 A.3d 1247, 1251 (Pa. Super. 2011). "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *M.R.B.*, supra, at 1251.

On appeal, Father asserts that the Court's Order is not supported by evidence of Father's unreadiness, unwillingness or inability to care for his child, where paternity was

6

only established two months before the Petition to Terminate Parental Rights was filed. A review of the record, however, indicates otherwise.

23 Pa.C.S. §2511(a)(1)

The language of 23 Pa.C.S. §2511(a)(1) requires the Court to examine a parent's conduct "continuing for a period of at least six months immediately preceding the filing of the petition" to see if that conduct "has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

At the time of this writing, A. has been in placement for 23 months, including 18 months between the April 30, 2015 dependency determination and the October 19, 2016 Petition to Terminate Parental Rights. In the six months immediately preceding the filing of the Petition, Father's only efforts on behalf of A. included finally taking an August 24, 2016 DNA test, taken a full year after he was first notified that he was possibly A.'s Father. Father had previously told Mother that he was not interested in submitting to any testing, and Father missed three appointments for that testing because 'he was not good with dates.' Conceivably, at the 15-month mark, in July of 2016, the Agency could have petitioned to terminate parental rights, and Father would not have even known, because he had not yet submitted to the genetic testing by that time.

This Court is concerned that forcing A. to remain in the uncertainty of placement, after almost two years already in placement, while continuing to wait for Father to step up as a father, would be harmful to A. The requirements of 23 Pa.C.S. §2511(a)(1) have been met.

7

<u>23 Pa.C.S. §2511(a)(2)</u>

The language of 23 Pa.C.S. §2511(a)(2) requires the Court to examine whether a parent's "repeated and continued incapacity, abuse, neglect or refusal ... has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." "The focus of the termination proceeding is on the conduct of the parent and whether his conduct justifies termination of parental rights." *In re B.,N.M.*, 856 A.2d 847, 854–55 (Pa. Super. 2004).

Father's efforts are not even minimal. For over a year of A.'s placement, Father had not even been identified, due to his own refusal and failures to arrive for testing. Father arrived for testing the month <u>after</u> the statutory 15-month placement threshold. The Agency indicated that "had [Father] attending the genetic testing when it was originally scheduled," it would have been able to assess Father and make any necessary service referrals before A. had been in care for 15 months" but that Father was a "blank slate" and responsible for the "delay on – on getting the DNA test." *1/30/17 N.T. at 25-26, 21-22.*

Parental duty is "best understood in relation to needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in development of the child. ... [T]he parental obligation is a positive duty which requires affirmative performance.". *In re C.S.*, 761 A.2d 1197 (Pa. Super. 2000). *In re G.P-R*, 851 A.2d 967 (Pa. Super. 2004). "Where the child is in foster care, this affirmative duty requires the parent to work towards the return of the child by cooperating with the Agency to obtain the rehabilitative services

8

necessary for him to be capable of performing his parental duties and responsibilities."

*In re G.P.R.*, 851 A.2d 967, 977 (Pa. Super. 2004), *summarizing In re: William L.*, 383 A.2d 1228, 1233-34 (Pa. 1978).

Here, Father's continued disinterest in caring for his child supports the termination decision made by the Court. This Court cannot gamble with the safety and welfare of the child. Father has had a year of ample opportunities to claim his child to prove himself to be an acceptable parent but has failed to do so. The requirements of 23 Pa.C.S. §2511(a), sections 1 and 2 have been met.

## CONCLUSION

For the reasons stated above, the Court concludes that it is appropriate to terminate Father's parental rights to A.R.L., Jr. The Clerk of the Orphans' Court is directed to transmit the record, *with the incorporated docket*, to the Superior Court.

BY THE COURT:

LESLIE GORBEY, JUDGE

DATED:    March 28, 2017

Attest: DEPUTY CLERK - OC

Copies to:
    John P. Stengel, Esquire
    Daniel H. Shertzer, Jr., Esquire
    Laura McGarry, Esquire

9